UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**NATHANIEL WRIGHT,**

                          **Plaintiff,**

    vs.                                            6:20-CV-478
                                                         (MAD/TWD)

**NEW YORK STATE OFFICE OF MENTAL HEALTH, ANNE MARIE T. SULLIVAN,** *Commissioner of the New York State Office of Mental Health*, **DANIELLE DILL,** *Executive Director Central New York Psychiatric Center*, **AIMEE DEAN,** *Executive Director of St. Lawrence Psychiatric Center*,

                          **Defendants.**
_____

**APPEARANCES:**

**LEGAL SERVICES OF
CENTRAL NEW YORK**
221 South Warren Street
Suite 300
Syracuse, New York 13202
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK
STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**OF COUNSEL:**

**JOSHUA T. COTTER, ESQ.
SAMUEL C. YOUNG, ESQ.**

**RYAN L. ABEL, AAG**

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

      On April 28, 2020, Plaintiff Nathaniel Wright ("Plaintiff"), an individual civilly committed at the Central New York Psychiatric Center ("CNYPC"), in the custody of the New York Office of Mental Health ("OMH"), commenced this action under Title II of the Americans with Disabilities

Act ("ADA"), 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. § 794. *See generally* Dkt. No. 1. Plaintiff asserts claims against OMH, Anne Marie T. Sullivan, the Commissioner of OMH, Danielle Dill, the Executive Director of CNYPC, and Aimee Dean, the Executive Director of the St. Lawrence Psychiatric Center ("St. Lawrence") (collectively "Defendants"), including disparate treatment under the ADA, improper surcharge under the ADA, and a violation of the Rehabilitation Act. *See id.* at ¶¶ 42–55. Plaintiff also seeks injunctive relief "to compel Defendants to assume responsibility for the repair and, if necessary, replacement, of his motorized wheelchair" and "to be refunded the money that was wrongfully taken out of his account and money he was previously coerced to spend to repair his motorized wheelchair." *Id.* at ¶ 5.

On June 25, 2020, Defendants filed a motion to dismiss the complaint, arguing that Plaintiff's claims are barred by the doctrine of collateral estoppel. *See generally* Dkt. No. 11-5. Plaintiff filed his response on July 20, 2020, with Defendants' reply following on July 24, 2020. *See* Dkt. Nos. 12, 13.

## II. BACKGROUND

In 2008, Plaintiff received a custom motorized wheelchair through the New York State Medicaid program. *See* Dkt. No. 1 at ¶ 16. In April 2012, Plaintiff was incarcerated and placed in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). *See id.* at ¶ 19. At this time, Plaintiff was given a manual wheelchair to replace his motorized wheelchair. *See id.* at ¶ 20. Plaintiff filed a lawsuit in 2013 before this Court, asserting claims under Title II of the ADA and the Rehabilitation Act (the "2013 Action"). *See generally* Dkt. No. 11-3. Ultimately, this Court entered judgment ordering DOCCS to permit Plaintiff to

use his motorized wheelchair while in DOCCS custody, and also directing Plaintiff to incur the expense of any routine service or maintenance necessary for the wheelchair. *See id.* at 25.

Subsequent to Plaintiff finishing his sentence in the custody of DOCCS, Plaintiff was civilly committed pursuant to Article 10 of the Mental Hygiene Law, and transferred to the custody of Defendant OMH. *See* Dkt. No. 1 at ¶ 24. Plaintiff was initially transferred to the St. Lawrence Psychiatric Center. *See id.* at ¶ 28. While at St. Lawrence, Plaintiff determined that his wheelchair had some minor problems that required repair, and that his wheelchair also exuded a smell. *See id.* Plaintiff contends that, while the staff of Defendant OMH agreed these repairs were necessary, the repairs and cleaning were the financial responsibility of Plaintiff. *See id.* Plaintiff subsequently signed disbursement forms allowing Defendant OMH to take money out of his account for this purpose. *See id.* at ¶ 31.

At a later date, Plaintiff was transferred to the Sex Offender Treatment Program ("SOTP") at CNYPC. *See id.* at ¶ 32. Plaintiff again noticed that his motorized wheelchair needed repair. *See id.* at ¶ 33. While CNYPC initially paid for these repairs, Plaintiff contends that staff has approached him several times to sign a disbursement form in order to garnish money from his account to pay for the repairs. *See id.* at ¶¶ 33–35. Plaintiff alleges that Defendant OMH began to garnish money from his account without his consent, and continues to do so. *See id.* at ¶¶ 38, 41. Plaintiff alleges that he is unaware of any other person participating in SOTP that "has been charged for medical care or disability related care." *Id.* at ¶ 36.

Defendants now move to dismiss Plaintiff's complaint. *See* Dkt. No. 11-5. The merits of this motion will be addressed herein.

## III. DISCUSSION

**A.     Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of

4

"entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955).  Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

When a party moves to dismiss a claim pursuant to Rule 12(b)(1), "the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction."  *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993) (citations omitted).  For purposes of such a motion, "the allegations in the complaint are not controlling . . . and only uncontroverted factual allegations are accepted as true. . . ."  *Id.*  (internal citations omitted).  Both the movant and the pleader are permitted to use affidavits and other materials to support and oppose the motion to dismiss for lack of subject matter jurisdiction.  *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted).  "Furthermore, 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'"  *Gunst v. Seaga*, No. 05 Civ. 2626, 2007 WL 1032265, *2 (S.D.N.Y. Mar. 30, 2007) (quoting *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)); *see also State Employees Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007) (holding that, in a motion to dismiss for lack of subject matter jurisdiction, a court "may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits").

In deciding a motion to dismiss, the court may consider "documents attached to, or incorporated by reference in the Complaint, and matters of which judicial notice may be taken[.]"  *Thomas v. Westchester Cty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002) (citing *Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999)) (other citation omitted).  "Documents that are integral to plaintiff's claims may also be considered, despite

5

plaintiff's failure to attach them to the complaint." *Id.* (citing *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 46-48 (2d Cir. 1991)). "Judicial notice of public records is appropriate—and does not convert a motion to dismiss into a motion for summary judgment—because the facts noticed are not subject to reasonable dispute and are capable of being verified by sources whose accuracy cannot be reasonably questioned." *Bentley v. Dennison*, 852 F. Supp. 2d 379, 382 n.5 (S.D.N.Y. 2012). As such, the Court will take judicial notice of Defendants' exhibits, which are documents from the 2013 Action against DOCCS (*Wright v. N.Y. State Dep't of Corr. and Cmty. Supervision et al.*, No. 9:13-CV-564). These documents include this Court's written decision, Plaintiff's filed complaint, as well as the transcript from the trial. *See* Dkt. Nos. 11-2, 11-3, 11-4.

**B.   Collateral Estoppel**

Defendants allege that Plaintiff's claims should be dismissed because they are barred by the doctrine of collateral estoppel. *See* Dkt. No. 11-5 at 5–9. "[T]he doctrine of collateral estoppel 'precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same.'" *Burgos v. Hopkins*, 14 F.3d 787, 792 (2d Cir. 1994) (quoting *Ryan v. New York Telephone Co.*, 62 N.Y.2d 494, 500 (1984)). Collateral estoppel bars relitigation of a legal or factual issue that was previously decided where:

> "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was [a] full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits."

*Washington v. N.Y. City Dep't of Educ.*, 740 Fed. Appx. 730, 732 (2d Cir. 2018) (quoting *Grieve v. Tamerin*, 269 F.3d 149, 153 (2d Cir. 2001)). "Use of collateral estoppel 'must be confined to situations where the matter raised in the second suit is identical in all respects with that decided

6

the first proceeding and where the controlling facts and applicable legal rules remain unchanged.'" *Faulkner v. Nat'l Geographic Enters., Inc.*, 409 F.3d 26, 37 (2d Cir. 2005) (quoting *Comm'r v. Sunnen*, 333 U.S. 591, 599–600 (1948)).

### 1. Identical Issues

"The burden of proving identity of the issue rests on the proponent of collateral estoppel, while the opponent bears the burden of proving that he or she did not have a full and fair opportunity to litigate the issue." *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 730 (2d Cir. 2001) (citing *Schwartz v. Public Adm'r*, 24 N.Y.2d 65, 73 (1969)).  This prong is concerned not with "claims or . . . causes of action as a whole, but with *issues* – single, certain and material point[s] arising out of the allegations and contentions of the parties." *Bifolck v. Philip Morris USA Inc.*, 936 F.3d 74, 81 (2d Cir. 2019) (emphasis in original) (internal quotations and citations omitted).  "Where, as here, the issue to which the plaintiff seeks to give preclusive effect concerns 'only the existence or non-existence of certain facts,' and not 'the legal significance of those facts ..., [it] need only deal with the same past events [as the previously-decided issue] to be considered identical.'" *Id.* (quoting *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 48 (2d Cir. 2014)).  "In such cases, the 'legal standards to be applied' need not be identical." *Id.* (quoting *Matusick*, 757 F.3d at 48).

To determine whether the issues are identical, the Court begins by restating the issue to which Defendants seek to give preclusive effect: that "Plaintiff is claiming that he is entitled to access and use his personal motorized wheelchair at Defendants' facility . . . [and] that, if Defendants do not cover the costs of repairing and servicing the wheelchair, then Plaintiff would be improperly denied access to his wheelchair in violation of both the ADA and the Rehabilitation Act." Dkt. No. 11-5 at 7.  The Court disagrees with Defendants that these issues are sufficiently

similar to those in the 2013 Action.  The 2013 Action before this Court involved DOCCS denying Plaintiff's request to use his motorized wheelchair and whether a reasonable accommodation existed.  The current action before this Court involves whether Defendants are discriminating against Plaintiff, based on his disability, by refusing to pay for repairs to Plaintiff"s motorized wheelchair.  *See* Dkt. No. 12 at 7.  The facts relevant to Plaintiff's current claims are that "(1) as a matter of OMH policy, residents in the [Sex Offender Treatment Program] receive free medical and disability-related care and (2) despite this policy, [Plaintiff] has been forced to assume the cost of repairs to his motorized wheelchair." *Id.* at 11.  These facts did not exist in the 2013 Action, do not overlap with the same past events as the 2013 Action and thus, the material points arising out of the allegations and contentions of the parties are not the same.  *Bifolck*, 936 F.3d at 81.  Therefore, the Court finds that this factor weighs in favor of Plaintiff.

### 2. Issue was Actually Litigated and Decided

Defendants allege that this issue was litigated and decided before this Court, because "this Court directly asked Plaintiff his position on his responsibility for service costs at trial . . . [and] partly based its decision on this very testimony from Plaintiff." Dkt. No. 11-5 at 7.  For a question to have been "actually litigated . . . it must have been properly raised by the pleadings or otherwise placed in issue and *actually determined* in the prior proceeding." *Cepeda v. Coughlin*, 785 F. Supp. 385, 389 (S.D.N.Y. 1992) (quoting *Halyalkar v. Bd. of Regents*, 72 N.Y.2d 261, 268 (1988)) (emphasis in original).

During the course of Plaintiff's previous trial for the 2013 Action, the Court asked Plaintiff the following questions:

> Q: If your motorized wheelchair needed technical work, would you expect to pay the cost of that privately?

|   |   |   |
|---|---|---|
| A: | | I can ask my fiancé, you know, she probably, if it didn't cost much she would do it. |
| Q: | | You wouldn't expect DOCCS to have a certified technician come and service your motorized wheelchair, would you? |
| A: | | No.  It's not their job.  I mean, I already had it, it's already paid for.  It was in working order when I brought it to the jail, so anything after that they caused it. |

Dkt. No. 11-4 at 73:18–74:1.  The Court also referred to this dialogue in one paragraph of its decision when discussing whether allowing Plaintiff to use his motorized wheelchair would unduly burden DOCCS.  *See* Dkt. No. 11-3 at 22–23 ("During trial, Plaintiff testified that he does not expect DOCCS to incur any financial burden with respect to the motorized wheelchair and intends to personally pay for maintenance, service, and technical work").  The Court also ordered Plaintiff to incur the expense "of any routine service or maintenance necessary." *Id.* at 25.  Defendants contend that these few sentences render it "indisputable that this issue was litigated and decided before this same Court."  Dkt. No. 11-5 at 7.  The Court disagrees.

While Plaintiff did testify that he would assume the costs of the repairs during the initial trial for the 2013 Action, he did so at most in passing.  *See Leather v. Eyck*, 180 F.3d 420, 426 (2d Cir. 1999); *see also S.E.C. v. Monarch Funding Corp.*, 192 F.3d 295, 309 (2d Cir. 1999) (holding that when an issue "received little attention from either the parties or the court" in the prior action, "applying collateral estoppel . . . would be improper").  Furthermore, this Court only used that information for the sole purpose of determining whether or not expenses were a relevant factor to an undue burden analysis.  *See* Dkt. No. 11-3 at 22–23.  The Court did not make a finding as to whether Plaintiff or Defendant OMH (which was not even a party to the 2013 Action) should ultimately be the party financially responsible, in perpetuity, for the repair and replacement of the motorized wheelchair.  *See Leather*, 180 F.3d at 426.  Thus, the issue of financial responsibility

9

was not actually litigated or decided in the 2013 Action. As such, the Court finds that this factor weighs in favor of Plaintiff.

### 3. Full and Fair Opportunity

The third element necessary for application of collateral estoppel is that the "'party against whom the earlier decision is asserted had a full and fair opportunity to litigate these issues.'" *Deutsch v. Integrated Barter Intern., Inc.*, 700 F. Supp. 194, 199 (S.D.N.Y. 1988) (quoting *Murphy v. Gallagher*, 761 F.2d 878, 883 (2d Cir. 1985)). "An issue is not actually litigated if 'there has been a default, a confession of liability, a failure to place a matter in issue by proper pleading or even because of a stipulation.'" *Id.* (quoting *Kaufman v. Eli Lilly and Co.*, 65 N.Y.2d 449, 457–58 (1985)). The party opposing the application of collateral estoppel "has the burden of showing that he did not have a full and fair opportunity to litigate the claims in the prior action." *O'Dell v. Bill*, No. 9:13-CV-1275, 2015 WL 710544, *15 (N.D.N.Y. Feb. 18, 2015) (citing *D'Andrea v. Hulton*, 81 F. Supp. 2d 440, 443 (W.D.N.Y. 1999)).

Defendants allege that Plaintiff is collaterally estopped because he did not appeal this Court's judgment in the first trial for the 2013 Action. *See* Dkt. No. 11-5 at 8–9. The Second Circuit has previously noted "that '[a]ppellate review plays a central role in assuring the accuracy of decisions' and that 'although failure to appeal does not prevent preclusion, . . . inability to obtain appellate review, or the lack of such review once an appeal is taken, does prevent preclusion.'" *Flood v. Just Energy Mktg. Corp.*, 904 F.3d 219, 237 (2d Cir. 2018) (citing *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986)). "If a party has not had an opportunity to appeal an adverse finding, then it has not had a full and fair opportunity to litigate that issue." *Johnson v. Watkins*, 101 F.3d 792, 795 (2d Cir. 1996) (citing *People v. Medina*, 208 A.D.2d 771, 772 (App. Div. 2d Dep't 1994)). A plaintiff's success in the first case weighs against the

10

application of collateral estoppel.  *See Yuan v. Rivera*, No. 96 Civ. 6628, 1998 WL 63404, *4 (S.D.N.Y. Feb. 17, 1998) (citing *Johnson*, 101 F.3d at 795).  This is because "[a] party who receives all that he has sought generally is not aggrieved by the judgment affording the relief and cannot appeal from it."  *Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 333 (1980) (citations omitted).  The Court agrees with Plaintiff that he was not aggrieved by the Court's initial judgment, because he received the relief he requested – the use of his motorized wheelchair.  *See* Dkt. No. 12 at 12.  Because Plaintiff was not aggrieved by the Court's initial judgment, under the general rule, he would not have had the opportunity to appeal.

However, Defendants also allege that no procedural limitations were present in the first trial for the 2013 Action that "affected Plaintiff's ability to litigate the issue over responsibility for repair and service costs in the prior action."  Dkt. No. 11-5 at 8.  The Court agrees with Defendants that Plaintiff did not address this argument in his brief submitted to the Court.  *See id.*; *see also* Dkt. No. 14 at 4.  As such, the "full and fair opportunity" element weighs slightly in favor of Defendants, as Plaintiff has the burden of showing he did not have a full and fair opportunity to litigate his claims in the 2013 Action.  *See O'Dell*, 2015 WL 710544, at *15.

### 4. Issue was Necessary to Support Judgment

The final prong of the collateral estoppel analysis requires that the issue to which Defendants seek to give preclusive effect "has been necessary to support a valid and final judgment on the merits" in the earlier case.  *Washington*, 740 Fed. Appx. at 732.  "An issue is 'necessary or essential only when the *final outcome* hinges on it.'"  *Bifolck*, 936 F.3d at 82 (quoting *Bobby v. Bies*, 556 U.S. 825, 835 (2009)) (emphasis in original).  "This requirement 'protect[s] against unfairness[ ] by ensuring that the issue [was] really disputed and that the loser . . . put out his best efforts."  *Id.* (quoting *Monarch Funding Corp.*, 192 F.3d at 307) (alterations in original);

11

*see also United States v. Hussein*, 178 F.3d 125, 129 (2d Cir. 1999) (holding that when parties have issues unnecessary to a judgment, parties may have "limited incentive to litigate [it] fully," and the issue may have been "less likely to receive close judicial attention") (citation omitted).

For the same reasons the Court has referenced previously, the information as to whether Plaintiff would assume the costs of repair was referenced minimally during the course of the 2013 Action, and was used by the Court for the limited purpose of determining whether expenses were a relevant factor to the undue burden analysis; it was not outcome determinative. *See* Dkt. No. 11-3 at 22–23. The Court did not make a finding as to whether Plaintiff or Defendant OMH (which was not even a party to the 2013 Action) should ultimately be the party financially responsible, in perpetuity, for the repair and replacement of the motorized wheelchair. *See Leather*, 180 F.3d at 426. As such, the Court finds that this factor weighs in Plaintiff's favor, as the issue was not necessary to the prior holding. *See Jim Beam Brands Co. v. Beamish & Crawford Ltd.*, 937 F.2d 729, 735 (2d Cir. 1991).

Based on the foregoing, Defendants have not satisfied the threshold required to bar Plaintiff's claims by collateral estoppel, because they did not establish three of the four necessary factors set forth above. As such, Defendants' motion to dismiss is denied.

### IV. CONCLUSION

After carefully reviewing the record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 24, 2020
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge